Michael G. Bongiorno
Ross E. Firsenbaum
WILMER CUTLER PICKERING
    HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
212-230-8800

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YARON GISSIN, Individually and on Behalf of All Those Similarly Situated,<br><br>               Plaintiff<br><br>    v.<br><br>DONALD L. ENDRES, DANNY C. HERRON and BRYAN D. MEIER,<br><br>               Defendants. | No. 09 CV 9338 (SAS)<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF**
**THEIR MOTION TO DISMISS THE COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................1

ARGUMENT .............................................................................................................................1

I.    The Alleged Misstatements Are Not Actionable ...............................................................1

    A.    Defendants' Statements Are Forward-Looking .........................................................1

    B.    Defendants' Forward-Looking Statements Are Accompanied By Meaningful Cautionary Language ..................................................................................................4

    C.    Defendants' Statements Are Puffery .........................................................................7

II.   Plaintiffs Do Not Allege Adequately Actual Knowledge or Recklessness ........................8

CONCLUSION ........................................................................................................................10

## TABLE OF AUTHORITIES

Federal Cases

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) .................................................................................................. 7

*Hammerstone NV, Inc. v. Hoffman*,
   No. 09 Civ. 2685, 2010 WL 882887 (S.D.N.Y. Mar. 10, 2010) ........................................ 6, 7

*In re Bausch & Lomb, Inc. Sec. Litig.*,
   592 F. Supp. 2d 323 (W.D.N.Y. 2008) .................................................................................. 7

*In re Centerline Holding Sec. Litig.*,
   No. 09-3744-cv, 2010 WL 2303312 (2d Cir. June 9, 2010) ................................................ 2, 4

*In re Corning Inc. Sec. Litig.*,
   No. 04-2845-cv, 2005 WL 714352 (2d Cir. Mar. 30, 2005) .................................................. 6

*In re IBM Corp. Sec. Litig.*,
   163 F.3d 102 (2d Cir. 1998) .................................................................................................. 7

*In re MBIA, Inc., Sec. Litig.*,
   No. 08 Civ. 264, 2010 WL 1253925 (S.D.N.Y. Mar. 31, 2010) ............................................ 8

*In re Nokia Corp. Sec. Litig.*,
   No. 96 Civ. 3752, 1998 WL 150963 (S.D.N.Y. Apr. 1, 1998) .............................................. 7

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   187 F.R.D. 133 (S.D.N.Y. 1999) ........................................................................................... 8

*In re PXRE Group Ltd. Sec. Litig.*,
   600 F. Supp. 2d 510 (S.D.N.Y. 2009), *aff'd Condra v. PXRE Group, Ltd.*,
   357 Fed. Appx. 393 (2d Cir. 2009) ........................................................................................ 9

*In re Refco, Inc. Sec. Litig.*,
   503 F. Supp. 2d 611 (S.D.N.Y. 2007) .................................................................................... 9

*In re Scottish Re Group Sec. Litig.*,
   524 F. Supp. 2d 370 (S.D.N.Y. 2007) .................................................................................. 10

*In re Sotheby's Holdings, Inc.*,
   No. 00 Civ. 1041, 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) .......................................... 9

*In re Stone & Webster, Inc. Sec. Litig.*,
   414 F.3d 187 (1st Cir. 2005) .................................................................................................. 2

*In re Vivendi Universal, S.A. Sec. Litig.*,
    381 F. Supp. 2d 158 (S.D.N.Y. 2003) .................................................................................. 3

*Institutional Investors Group v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) ................................................................................................ 3

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
    No. 07 Civ. 0976, 2008 WL 4449280 (S.D.N.Y.. Sept. 30, 2008) ...................................... 7

*Loveman v. Lauder*,
    484 F. Supp. 2d 259 (S.D.N.Y. 2007) ............................................................................... 10

*Marcus v. Frome*,
    275 F. Supp. 2d 496 (S.D.N.Y. 2003) ................................................................................. 9

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) .............................................................................................. 10

*Rosner v. Star Gas Partners, L.P.*,
    344 Fed. Appx. 642 (2d Cir. 2009) ..................................................................................... 7

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996) .................................................................................................. 7

*Slayton v. Am. Exp. Co.,*
    604 F.3d 758 (2d Cir. 2010) ..................................................................................... 2, 4, 8, 10

Federal Rules

Federal Rules of Civil Procedure 9(b) ......................................................................................... 8

**PRELIMINARY STATEMENT**

Plaintiffs' memorandum in opposition to Defendants'[1] motion to dismiss ("Opposition" or "Opp.") confirms that Plaintiffs seek to hold Defendants liable for forward-looking statements that are protected by the PSLRA's safe-harbor. Plaintiffs, armed only with perfect hindsight based on VeraSun's bankruptcy, cherry-pick and, in many instances, re-write portions of Defendants' statements in an effort to convert cautiously optimistic statements about VeraSun's future prospects into fraudulent misstatements. Plaintiffs ignore governing Second Circuit precedent defining the scope of forward-looking statements, rely on inapposite case law, and misstate applicable legal standards. At the end of the day, there was no fraud, and the Complaint provides no basis to plead fraud. Rather, VeraSun was overtaken by market conditions it did not foresee. The Complaint should be dismissed.

**ARGUMENT**

**I.     The Alleged Misstatements Are Not Actionable**

   A.     <u>Defendants' Statements Are Forward-Looking</u>

Plaintiffs argue in their Opposition that "the statements alleged in the Complaint are not 'forward-looking' because they address the prior and present status as well as future outlook for VeraSun's liquidity." Opp. at 9. Throughout the Complaint, Plaintiffs repeat the mantra that the Defendants falsely claimed that the Company had "strong" liquidity. But Defendants never stated that the Company had "strong" liquidity or "strong existing liquidity," *id.*, and Plaintiffs fail to point out where they supposedly did. Instead, Plaintiffs misleadingly highlight portions of Defendants' statements, ignore the plain language of predictions in the very same statements, and fail, as they must, to assess the statements in their entirety and in the context of the

---

[1] Capitalized terms have the same meaning as they do in the Defendants' memorandum of law in support of their Motion to Dismiss the Complaint, dated April 29, 2010 ("VeraSun Br.").

circumstances in which they were made. *See In re Centerline Holding Sec. Litig.*, No. 09-3744-cv, 2010 WL 2303312, at *2 (2d Cir. June 9, 2010).

For example, Plaintiffs cite to the statement: "[B]ased on our **current** expectation of cash flows from operations and the cash and cash-equivalent short-term investments, and also our revolving credit facility, we feel we will be in a position to fund those capital investments for the year." Opp. at 9, citing Compl. ¶ 83 (bold emphasis in original in Opp., underline added). Plaintiffs highlight "current" but ignore that it plainly modifies "expectation," and also ignore the forward-looking "we feel we will be" conclusion. *Id.* As the Second Circuit held, in a case decided after Defendants' motion to dismiss was filed but well before Plaintiffs' opposition was served (yet not cited by Plaintiffs), "[t]he use of linguistic cues like 'we expect' or 'we believe,' when combined with an explanatory description of the company's intention to thereby designate a statement as forward-looking" satisfies the PSLRA's safe-harbor. *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 769 (2d Cir. 2010). This, and all other alleged misstatements, are protected by the safe-harbor. *See, e.g.,* Compl. ¶ 92 (" . . . we believe that our existing sources of capital will be sufficient to fund anticipated working capital requirements . . ."); ¶ 95 (" . . . we think we'll [we will] be just fine."); *see also* Compl. ¶¶ 83-100, VeraSun Br. at 13-14.[2]

Plaintiffs' approach is inconsistent with *Stone & Webster*, which they deem "striking similar" to this action. Opp. at 10, citing *In re Stone & Webster, Inc. Sec. Litig.*, 414 F.3d 187, 213 (1st Cir. 2005). In *Stone & Webster*, the First Circuit concluded that "to determine whether a statement falls within the safe harbor, a court must examine which aspects of the statement are alleged to be false." *Id.* There, the alleged misstatements concerned Stone & Webster's present

---

[2] Plaintiffs apparently concede that the alleged misstatements other than those cited on pages 9-10 of the Opposition are forward-looking. VeraSun Br. at 12-17.

- 2 -

access to funds.  *Id.*; *see also In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 183 (S.D.N.Y. 2003) (alleging misstatement about defendant's present "cash situation") (cited in Opp. at 9, 11-12); *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 255-56 (3d Cir. 2009) (distinguishing *Stone and Webster* and concluding statements were not actionable because present tense portion of statements, when read in context, could not "meaningfully be distinguished from the future projection of which they are a part.").

Here, however, Plaintiffs do not challenge the present tense portion (if any) of any statement.  For example, Plaintiffs highlight statements such as "We ***have a large investment in working capital*** and that investment will grow as we more than double our quarterly volumes . . . ."  Opp. at 9, citing Compl. ¶ 88 (emphasis in original).  But they never allege that VeraSun did not have a large investment in working capital; their challenge is to the remaining part of the statement, which is unquestionably forward-looking.  *See id.*  Similarly, Plaintiffs highlight "***recently-secured***," allegedly describing a credit facility.  Opp. at 9.  But, what Defendants said is that "this credit facility *will provide* additional liquidity sources to support our accelerated growth."  *See* Declaration of Ross E. Firsenbaum, dated July 14, 2010, Ex. 1 (June 2, 2008 Press Release) (emphasis added).  Again, the challenge is not to the description of the credit facility itself, but to the prediction.  Thus, the reasoning in *Stone and Webster* supports Defendants, not Plaintiffs.

Finally, Plaintiffs ignore the context of Defendants' statements and impermissibly add their own words to transform forward-looking statements into the present tense.  For example, Plaintiffs claim that Defendants said that VeraSun "<u>currently has</u> liquidity flexibility to continue to run our business and grow our business."  Opp. at 9, citing Compl. ¶ 48 (emphasis added).  But the transcript of the earnings call at issue makes clear that (1) Defendants never used the

words "currently has" to describe the Company's liquidity and (2) the statement was forward-looking:

> Q. From your previous answer it seems like this new credit facility<u>'s going to be used</u> primarily for working and capital needs. <u>Do you expect</u> to use any of it for construction capital?
>
> A. You know, not at this point. We think our construction capital's probably provided. Of course, that always depends on your margin assumptions that you put in the models and where the market ends up going. Once again, it provides us with some liquidity flexibility <u>to continue to</u> run our business and grow our business.

Bongiorno Decl. Ex. 9 (Q1 Call) at 22 (emphasis added); *see Centerline*, 2010 WL 2303312, at *2.[3]

### B. Defendants' Forward-Looking Statements Are Accompanied By Meaningful Cautionary Language

Less than two months ago the Second Circuit made clear that because the PSLRA's safe harbor provision is disjunctive, a forward-looking statement is protected **either** if is accompanied by meaningful cautionary language **or** "if the plaintiffs do not 'prove that the forward-looking statement . . . was . . . made or approved by [an executive officer] with actual knowledge by that officer that the statement was false or misleading.'" *Slayton*, 604 F.3d at 773 (emphasis added).[4] Thus, Defendants' alleged knowledge of any material misstatements is irrelevant so long as

---

[3] Plaintiffs argue that "Defendants had a duty to disclose the liquidity crisis," Opp. at 14, but Plaintiffs do not cite any case law identifying a free-standing duty to disclose, even if they had identified a "liquidity crisis," which they have not. *See, infra,* n. 5; *see also Centerline*, 2010 WL 2303312, at *1 ("[f]or an omission to be considered actionable under Section 10(b) and the SEC's implementing regulation, the defendant must be subject to an underlying duty to disclose."). Further, Plaintiffs apparently concede that Defendants had no duty to make interim disclosure of third-quarter losses, as they do not respond to Defendants on this point. *See* VeraSun Br. at 18-19. Thus, the only issue is whether Plaintiffs have identified an actionable statement.

[4] Opp. at 8-9. Plaintiffs incorrectly suggest that Defendants must prevail on both prongs of the safe harbor. The Second Circuit has squarely rejected Plaintiffs' interpretation of the PSLRA.

Defendants' statements were forward-looking and accompanied by meaningful cautionary language. *See id.*

In their opening memorandum, Defendants, citing ample legal authority, explained in detail how they provided copious warnings regarding forward-looking statements, including disclosures regarding the very risks that Plaintiffs say they concealed. VeraSun Br. at 15-17. Plaintiffs' response is simply to conclude that Defendants' statements are "generic" and "boilerplate." Opp. at 11-12. Plaintiffs do not distinguish or otherwise respond to the cases Defendants cite in their opening memorandum, VeraSun Br. at 15-17, and cite no case holding that the types of warnings issued by Defendants are inadequate. To the contrary, Defendants cautioned expressly about the very risks that Plaintiffs say ultimately led to their losses, namely that VeraSun's growth strategy was too aggressive and that the Company committed to accumulator contracts that caused losses it could not sustain. *See* Opp. at 20.

*First*, Defendants warned investors about the risks entailed in the Company's growth strategy. 2007 10-K at 27 ("if we are not able to manage growth profitably, our business and financial results could suffer"), 16-17 (describing in detail risks associated with growth); Q1 10-Q at 32 ("[s]ome factors that could cause our actual results to differ include . . . our ability to achieve the expected benefits from our recent acquisition of [US BioEnergy] . . . [and] the uncertainties related to our acquisitions of US BioEnergy, ASA OpCo Holdings LLC, and other businesses"); Q2 10Q at 9-10, 32, 44, 47.

*Second*, Defendants cautioned investors that the Company's "business" and "operating results" were "influenced by seasonal fluctuations in the price of [its] primary operating inputs, corn and natural gas," and that "it [wa]s unclear how these seasonal fluctuations [would] affect

[the Company's] results over time." 2007 10-K at 13.  Indeed, the Company could not have been more specific about the risks associated with its accumulator contracts:

> In an effort to partially offset the effects of volatility of . . . corn . . . costs, we enter into contracts [i.e. accumulator contracts] to . . . purchase a portion of our respective corn . . . requirements on a forward basis and also engage in other hedging transactions involving exchange-traded futures contracts for corn . . . The financial statement impact of these activities is dependent upon, among other things, the prices involved . . . Hedging arrangements also expose us to the risk of financial loss in situations where . . . there is a change in the expected differential between the price of the commodity underlying the hedging agreement and the actual prices paid . . . by us for the physical commodity bought . . . As a result, our results of operations and financial position may be adversely affected by increases in the price of corn . . .

*Id.*; *see also* Q1 10-Q, at 26-27 ("We are subject to significant market risk with respect to the price of . . . corn, the principal commodity used in our ethanol production process . . . The . . . price of corn [is] subject to wide fluctuations due to unpredictable factors . . . As of March 31, 2008, we had contracted forward on a fixed price basis the following quantities of corn"); Q2 10-Q, at 45-46 (updating disclosure of accumulator contracts entered into as of June 30, 2008).[5]

---

[5] Although Plaintiffs deem the Company's cash position a "crisis," Opp. at 14, Plaintiffs do not dispute that VeraSun had (and accurately disclosed) $28 million in cash and an available credit line of $85 million during the spring and summer of 2008, Compl. ¶ 49, – facts that are not plausibly indicative of a "crisis."  And Plaintiffs do not take issue with the accuracy of any of the Company's disclosures about its "working capital," "capital expenditures," net cash provided by (used in) operating activities," "net cash used in investing activities," and "net cash provided by financing activities," *see e.g.*, 2007 10-K at 33.  Nor do Plaintiffs dispute that Defendants disclosed the $125 million credit facility secured by the Company in March 2008, which accurately informed investors that the Company had cash available for "general corporate purposes, including cash expenditures."  *See* Q1 10-Q at 17; Q2 10Q at 42-43; *see also Hammerstone NV, Inc. v. Hoffman*, No. 09 Civ. 2685, 2010 WL 882887, at *7 (S.D.N.Y. Mar. 10, 2010) ("[t]he naked assertion of concealment of material facts which is contradicted by published documents which expressly set forth the very facts allegedly concealed is insufficient to constitute actionable fraud.").  Plaintiffs' sole grievance seems to be that VeraSun did not use the word "crisis" to describe its situation.  But an issuer has no duty to cast aspersion on itself, or to cast facts in a bad light, where the facts are accurately disclosed.  *See, e.g., In re Corning Inc. Sec. Litig.*, No. 04-2845-cv, 2005 WL 714352, at *1 (2d Cir. Mar. 30, 2005) (citing cases);

- 6 -

### C.     Defendants' Statements Are Puffery

All of Plaintiffs' alleged misstatements are forward-looking.  But, even if the Court were to conclude that any statements were not forward-looking, many statements are nonetheless puffery and are thus not actionable.  *See* VeraSun Br. at 12, n. 12.  Plaintiffs' principal argument is that a determination of whether a statement is puffery "is generally not an appropriate basis on which to dismiss a complaint at this stage of the action."  Opp. at 13.  But Plaintiffs are mistaken: courts in this Circuit routinely grant motions to dismiss on this very basis.  *See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 811 (2d Cir. 1996).[6]

Plaintiffs' fallback position is that the alleged misstatements "do not reflect opinion and belief" but, rather, "are actionable as factual representations."  Opp. at 13.  Plaintiffs rely on two cases, both of which undermine their position.  First, Plaintiffs cite *In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998), in which the Second Circuit affirmed the district court's dismissal of the plaintiffs' claims, holding that "the challenged statements regarding the future payment of dividends were predictions or opinions, and not guarantees," *id.* at 107, and observing that "[i]t would be unreasonable, as a matter of law, for an investor to rely on these projections as long-term guarantees because these statements contain sufficient cautionary language to indicate that they were only short-term predictions" *id.* at 108.  This is exactly the

---

VeraSun Br. at 17-18.

[6] *See also Rosner v. Star Gas Partners, L.P.*, 344 Fed. Appx. 642, 644 (2d Cir. 2009); *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009); *Hammerstone*, 2010 WL 882887, at *5; *Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07 Civ. 0976, 2008 WL 4449280, at *13, 16 (S.D.N.Y.. Sept. 30, 2008); *In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 354 (W.D.N.Y. 2008); *In re Nokia Corp. Sec. Litig.*, No. 96 Civ. 3752, 1998 WL 150963, at *6-7 & n. 3 (S.D.N.Y. Apr. 1, 1998).

type of language on which Plaintiffs rely here.  *See, e.g.*, Compl. at ¶ 95 (" . . . we think we'll be just fine.").

In *In re Oxford Health Plans, Inc. Sec. Litig.*, 187 F.R.D. 133, 141 (S.D.N.Y. 1999), the court reasoned that statements using the words "believe" or "belief" did not convert statements into puffery because the underlying statements were grounded in past or present facts.  *See id.* at 141 ("Several of the statements dubbed by the defendants as 'beliefs' rely on factual assertions. The statement 'The silver lining is that we are a better company for the challenge we overcame' rests on the factual assertion that the company has overcome the challenge").  Here, in contrast, as discussed above, Defendants' statements of optimism concern soft predictions of future events accompanied by meaningful cautionary language.

## II. Plaintiffs Do Not Allege Adequately Actual Knowledge or Recklessness

Plaintiffs' claims also fail because they do not (and cannot) allege adequately that the Defendants had actual knowledge that any statement at issue was false or misleading.  *See Slayton*, 604 F.3d at 773.  Because the safe harbor specifies an "actual knowledge" standard for forward-looking statements, "'the scienter requirement for forward-looking statements is stricter than for statements of current fact.'"  *Id.*  "'Whereas liability for the latter requires a showing of either knowing falsity or recklessness, liability for the former attaches only upon proof of <u>knowing falsity</u>.'"  *Id.* (emphasis added).

Plaintiffs fall far short of this heightened standard.  Their entirely conclusory assertion that Defendants had actual knowledge "because of their executive positions and responsibilities and access to material non-public information," Opp. at 17, fails to comport with the Reform Act or Rule 9(b).  *See, e.g., In re MBIA, Inc., Sec. Litig.*, No. 08 Civ. 264, 2010 WL 1253925, at *17

(S.D.N.Y. Mar. 31, 2010) (citing cases).[7] Although Plaintiffs mention "spreadsheets" that were allegedly available to Defendants, they fail to identify the content of any such document that contradicted Defendants' public statements. Opp. at 17; *see, e.g., Marcus v. Frome*, 275 F. Supp. 2d 496, 502 (S.D.N.Y. 2003) ("[t]he Complaint does not allege . . . that the information contained in those documents, whatever they were, was inconsistent or contradicted the information that formed the basis of the defendants' public statements."); *In re Sotheby's Holdings, Inc.,* No. 00 Civ. 1041, 2000 WL 1234601, at *7-8 (S.D.N.Y. Aug. 31, 2000) (noting that failure to identify specific documents or information contradicting public statements constitutes "failing" of complaint adequately to plead recklessness or conscious misbehavior).

Plaintiffs' other attempts to allege scienter fare no better. *First*, the extent of the eventual loss alone, Opp. at 20, cannot give rise to a strong inference of scienter. *See In re PXRE Group Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 545-46 (S.D.N.Y. 2009) (granting motion to dismiss, noting that it "is well established that the 'size of the fraud alone does not create an inference of scienter'" and rejecting such argument where, as here, unforeseen environmental factors caused inaccurate loss estimates), *aff'd*, *Condra v. PXRE Group Ltd.*, 357 Fed. Appx. 393 (2d Cir. 2009). *Second*, VeraSun's counsel's statement in the Company's bankruptcy proceedings, Opp. at 19, n. 24, does not identify which "stories out there" were true, and certainly suggests nothing about Defendants' knowledge of any facts contrary to any public statement.

*Third*, Plaintiffs' eleventh hour argument that Mr. Endres had "clear motive," Opp. at 22, to keep the Company afloat "through at least September" is nowhere to be found in the

---

[7] Indeed, in *In re Refco, Inc. Sec. Litig.,* 503 F. Supp. 2d 611, 649-51, 653-54 (S.D.N.Y. 2007), a case on which Plaintiffs rely, Opp. at 22, Judge Lynch held that the allegation of committee membership was insufficient to establish scienter without "specific allegations of various reasonably available facts, or red flags, that should have put the officers on notice that the public statements were false." (internal quotation marks omitted).

- 9 -

Complaint and thus may not be considered on this motion to dismiss. *See, e.g., Loveman v. Lauder*, 484 F. Supp. 2d 259, 266 (S.D.N.Y. 2007) (rejecting plaintiff's "post hoc attempt to rewrite the complaint"). In any case, Plaintiffs admit that Mr. Endres would have had to wait until September 28 to sell any restricted stock. Opp. at 22. But the disclosures at issue came twelve days before, Compl. ¶¶ 103-04, and thus Plaintiffs' theory fails on its face.

*Fourth*, Plaintiffs equate Defendants' retention of a consultant to assist with "cash flow projections," *see* Compl. ¶ 76, with an imminent bankruptcy or liquidity crisis, but such an allegation is made with hindsight and lacks any underlying factual basis. *Fifth*, the Company's commencement of a shelf offering, *see* Compl. ¶ 73-74, cannot support an inference of scienter without an allegation that the Defendants engaged in such an offering to secure personal gain. *See Rombach v. Chang,* 355 F.3d 164, 177 (2d Cir. 2004) (allegations of secondary public offering, without allegations that defendants engaged in these transactions "to secure personal gain," were insufficient to allege scienter); *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370, 393 n. 171 (S.D.N.Y. 2007) (SAS) (rejecting argument that inference of fraud may be drawn based on defendants' desire to raise funds in securities offerings).[8]

## CONCLUSION

For all the above reasons, Defendants respectfully move this Court to dismiss the Consolidated Class Action Complaint.

---

[8] Because Plaintiffs fail to plead the fraud that they claim as the primary violation, their Section 20(a) claim also must be dismissed. *See Slayton*, 604 F.3d at 777-78.

Respectfully Submitted,

Dated: New York, New York  
July 14, 2010

WILMER CUTLER PICKERING
 HALE AND DORR LLP

By: /s/ Michael G. Bongiorno  
Michael G. Bongiorno  
Ross E. Firsenbaum  
399 Park Avenue  
New York, New York 10022  
Tel.: 212-230-8800  
Fax: 212-230-8888

*Attorneys for Defendants Donald L. Endres, Bryan D. Meier, and Danny C. Herron*